IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ENTERED
08/07/2009

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| CYPRESSWOOD LAND PARTNERS, I, | § | Case No. 07-32437-H4-11 |
| | § | |
| Debtor. | § | Chapter 11 |

MEMORANDUM OPINION ON (1) SECOND AND FINAL APPLICATION FOR
COMPENSATION AND REIMBURSEMENT OF EXPENSES FOR BEIRNE MAYNARD
& PARSONS; (2) DEBTOR'S OBJECTION TO SECOND AND FINAL APPLICATION
FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES FOR BEIRNE
MAYNARD & PARSONS; AND (3) DEBTOR'S SUPPLEMENTAL OBJECTION TO
SECOND AND FINAL APPLICATION FOR COMPENSATION AND
REIMBURSEMENT OF EXPENSES FOR BEIRNE MAYNARD & PARSONS
[Docket Nos. 250, 255, & 260]

I. INTRODUCTION

In the case at bar, Cypresswood Land Partners, I (Cypresswood or the Debtor) objects to the

fee application filed by its former counsel, Beirne, Maynard & Parsons, L.L.C. (BMP). The Debtor

contends that the fee application is defective in several respects and that the services BMP rendered

provided no benefit to the Debtor's estate. The Debtor requests that this Court deny the

compensation and reimbursement of expenses which BMP requests and also order disgorgement of

fees already paid to the firm. The Court sustains the Debtor's objection. Accordingly, BMP's

requested compensation and reimbursement of expenses is denied, and BMP is ordered to disgorge:

(1) all fees paid to it to date on behalf of the Debtor; and (2) all fees credited to Morrow's personal

account with BMP that were paid while BMP was representing the Debtor (hereinafter referred to

as Complete Disapproval and Disgorgement).

After considering the arguments, the pleadings of the parties, the testimony adduced during

hearings, and the evidence admitted, the Court now makes its written findings of fact and

conclusions of law pursuant to Federal Rules of Bankruptcy Procedure 7052 and 9014. [1] To the extent that any finding of fact is construed as a conclusion of law, it is adopted as such. Moreover, to the extent that any conclusion of law is construed as a finding of fact, it is adopted as such. The Court reserves the right to make additional findings of fact and conclusions of law as it deems appropriate or as may be requested by any of the parties.

## II. FINDINGS OF FACT

1.      The Debtor is a Texas joint venture formed by partners Stephen A. Morrow (Morrow) and Redwood Properties, L.L.C. (Redwood). The partners formed Cypresswood as a venture to buy, develop, and sell certain real estate located along State Highway 249 in Houston, Texas (the Property).

2.      On November 28, 2006, Morrow engaged BMP to represent him, in his individual capacity, on business matters in connection with his investment in Cypresswood. [Cypresswood Ex. 1.] BMP and Morrow signed an engagement agreement, which provided that BMP's representation of Morrow would "extend to and cover any and all other matters . . . unless and until a separate agreement or agreements . . . shall be executed." [Cypresswood Ex. 1.]

3.      On April 4, 2007, Morrow filed an involuntary petition against the Debtor under Chapter 11 of Title 11 of the United States Code (the Bankruptcy Code). [Docket No. 1.] On April 27, 2007, Redwood filed an answer opposing the involuntary petition. [Docket No. 7.]

4.      Thereafter, pursuant to an agreement with Redwood, Morrow took over as managing venturer of the Debtor. On June 25, 2007, this Court entered an Order for Relief, [Docket

---

[1] Any reference herein to "the Code" refers to the United States Bankruptcy Code. Further, reference to any section (i.e. §) refers to a section in 11 U.S.C., which is the United States Bankruptcy Code. Reference to a "Rule" or "Bankruptcy Rule" refers to the Federal Rules of Bankruptcy Procedure.

No. 12], which the Debtor—now being managed by Morrow—wanted this Court to do. Pursuant to 11 U.S.C. §§ 1107(a) and 1108, the Debtor, through Morrow as managing venturer, continued to operate its business and manage its properties, affairs, and assets as a debtor-in-possession.

5.  On July 17, 2007, this Court granted the Debtor's Application to Employ BMP as Counsel (the Application to Employ BMP), [Docket No. 27], and thereafter BMP represented the Debtor in the bankruptcy case. [Docket No. 34.] The Application to Employ BMP disclosed that BMP previously represented Morrow in several matters unrelated to this Chapter 11 bankruptcy case and that BMP represented Morrow as the petitioning partner who filed the involuntary petition in this case. [Cypresswood Ex. 2, Slusher Aff. p. 5.]

6.  On December 7, 2007, BMP filed its First Interim Application for Expenses and Reimbursement for services rendered between June 25, 2007 and August 31, 2007[2] (the First Application). [Docket No. 81.] No objection to the First Application was lodged. Thereafter, on January 4, 2008, this Court entered an Order Granting First Interim Application for Compensation and Reimbursement totaling $126,638.06, which approved $122,679.50 in fees and $3,958.56 in expenses. [Docket No. 93.]

7.  On November 5, 2008, in Harris County Civil Court at Law No. 1, Docket No. 928779, AT&T Advertising, L.P. (AT&T) sued Cypresswood, Redwood, and Morrow, individually, for breach of contract for failure to pay advertising fees. [Cypresswood Ex. 9.] On November 20, 2008, Morrow notified BMP of this lawsuit by e-mail. [Cypresswood Ex. 9.]

---

[2] June 25, 2007 through August 31, 2007 is the correct and accurate Application Period for the First Interim Application for Expenses and Reimbursement. The Fee Application Summary, [Docket No. 84], showed an incorrect Application Period (April 4, 2007 through September 30, 2007). Testimony at the June 9, 2009 hearing from one of BMP's attorneys, J. Seth Moore, corrected this clerical error. [Docket No. 286, p.14, ll. 7-11.]

Later on the same day, BMP responded by e-mail to Morrow stating, "We [i.e. BMP] will deal with this [i.e. the AT&T suit]." [Cypresswood Ex. 10.]   However, BMP took no subsequent action on the matter and on March 12, 2009, a default judgment was entered in favor of AT&T against Cypresswood, Redwood, and Morrow, individually. [Cypresswood Ex. 11.]

8.    On November 12, 2008, the Debtor filed its Amended Chapter 11 Plan of Reorganization (the Amended Plan), [Docket No. 165], and Amended Disclosure Statement (the Amended Disclosure Statement). [Docket No. 166.]   On January 21, 2009, this Court approved the Amended Disclosure Statement and confirmed the Amended Plan. [Docket No. 204.] The Amended Disclosure Statement, signed by J. Seth Moore (Moore) for BMP, set forth that the deadline for all professionals employed pursuant to 11 U.S.C. §§ 327 and 330 to file administrative claims was sixty (60) days after the effective date of the Amended Plan.

9.    The Amended Plan provides that the "Debtor, Purchaser, or Reorganized Debtor" is to pay all Allowed Administrative Expense Claims. [Docket No. 165.] The Amended Plan further provides that the Reorganized Debtor (i.e. Cypresswood) is to be responsible for all post-confirmation fees. [Docket No. 165.][3] The Amended Plan also provided for the sale of the Property to Grace Interests, L.L.C. (Grace or the Purchaser), a Texas limited liability company also managed by Morrow. [Docket No. 165.]

10.   On February 2, 2009, Cypresswood, Grace, and Morrow, individually, executed an Assignment and Assumption Agreement to assign Cypresswood's Property obligations to

---

[3] By this time, the Debtor was actually a Reorganized Debtor, as the Amended Plan had been confirmed. To avoid confusion in this Memorandum Opinion, however, reference will be made throughout to only the Debtor.

Grace in accordance with the Amended Plan (the Agreement). [Cypresswood Ex. 7.] Morrow signed the Agreement for all parties. [Cypresswood Ex. 7.] Morrow testified at the hearing on BMP's final fee application that he felt forced to execute the Agreement because BMP—through one of its attorneys, Moore—represented to him that without his execution of the Agreement, the sale could not proceed and Grace would lose the Property. [Docket No. 287, p.15, ll. 13-21.] Prior to the execution of the Agreement, BMP had advised Morrow in an e-mail dated December 30, 2008 that BMP could not represent Grace in this particular transaction. [Cypresswood Ex. 4.] After receiving this information, Morrow obtained separate counsel to represent Grace in the post-confirmation transaction involving the Property. Grace's counsel was not given the Agreement to review until the actual day of closing, and Grace's counsel never approved the Agreement.[4] [Docket No. 271-2, Ex. A.]

11.     On February 3, 2009, the Amended Plan became effective (the Effective Date) and the sale of the Property occurred, as referenced in the Amended Plan. Grace purchased the Property and assumed certain liabilities of Cypresswood, including the obligation to pay taxes. [Cypresswood Ex. 7.]

12.     On April 22, 2009, BMP filed its Second and Final Application for Compensation and Reimbursement of Expenses by Beirne Maynard & Parsons, L.L.P. (the BMP Final Application) seeking compensation and reimbursement of expenses from September 1, 2007 through January 21, 2009 (the Application Period). [Docket No. 250.] BMP seeks final approval and payment totaling $258,860.27, with $248,246.80 in fees and $10,613.47 in

---

[4] Lori Hood, an attorney at the Bowes Law Firm, represented Grace—and only Grace—at the closing of the sale of the Property to Grace in February 2009. [Docket No. 271-2, Ex. A.] The record is silent as to whether Lori Hood was present at the closing of the sale of the Property.

expenses incurred during the Application Period.

13.    After submitting both its First Application, [Docket No. 93], and the BMP Final Application, [Docket No. 250], BMP requested this Court to approve a total of $385,498.33, with $370,926.30 in total fees and $14,572.03 in total expenses. [Docket Nos. 81 & 250-3.]

14.    To date, BMP has received $80,000.00 for services that BMP has rendered on behalf of the Debtor, $30,000.00 of which the Debtor paid on September 2, 2008, [Cypresswood Ex. 29], and $50,000.00 of which was paid by Grace on behalf of the Debtor on December 31, 2008. [Cypresswood Ex. 5.]

15.    BMP's accounting records show that BMP, during the Application Period and after the Debtor retained BMP as its counsel for the Chapter 11 case, continued to receive payments from Morrow that were applied to Morrow's personal account. Morrow paid $58,477.66 on August 13, 2007 and $22,430.17 on October 18, 2007 towards his personal account. Then, on January 13, 2008, Morrow paid another $35,000.00. [Cypresswood Ex. 19.] At the hearing on the BMP Final Application, Morrow introduced a true and correct copy of a $35,000.00 check signed by Morrow through Money Strategies of Texas (an entity which Morrow owns) on behalf of the Debtor and issued to BMP. [Cypresswood Ex. 30.] BMP offered no evidence to show to which account the $35,000.00 was applied: Morrow's personal account or the Debtor's account.

16.    On May 1, 2009, this Court issued an order allowing BMP to withdraw as counsel for the Debtor. [Docket No. 253.] Johnson, Spalding, Doyle, West, & Trent, L.L.P. (JS) took over as counsel for the Debtor.

17.    On May 11, 2009, the Debtor, through JS, filed the Debtor's Objection to Second and Final

Application for Compensation and Reimbursement of Expenses by Beirne, Maynard &

Parsons, L.L.P. (Debtor's Objection), alleging inconsistencies and discrepancies throughout

the BMP Final Application. [Docket No. 255.] Subsequently, on May 19, 2009, the Debtor

filed the Reorganized Debtor's Supplemental Objection to Second and Final Application for

Compensation and Reimbursement of Expenses by Beirne, Maynard & Parsons, L.L.P.

(Debtor's Supplemental Objection). [Docket No. 260.]

18.     On June 8, 9 and 10, 2009, this Court held hearings on the BMP Final Application, the

Debtor's Objection, and the Debtor's Supplemental Objection (Application and Objection

Hearings).   BMP, through its representative, Moore, testified that BMP had ceased

representing Morrow, individually, [Docket No. 286, p. 31, ll. 12-13], providing as evidence

the Affidavit of Vincent P. Slusher (Slusher), a partner of BMP, in which Slusher represented

that BMP represented Morrow only prior to its representation of the Debtor.[5] [Cypresswood

Ex. 2, Slusher Aff. p. 5.]  Morrow testified to the contrary, stating that BMP continued to

represent him, in his individual capacity, throughout the entire Chapter 11 case and continued

to accept payment from him after the Debtor filed its Chapter 11 petition. [Docket No. 287,

p. 85, ll. 4-6.]

19.     On June 16, 2009, JS, on behalf of the Debtor, filed a Memorandum of Law Supporting the

Debtor's Supplemental Objection to the BMP Final Application (the Memo in Support of

Debtor's Objections). [Docket No. 273.] In the Memo in Support of Debtor's Objections, the

Debtor asserts, inter alia, that BMP violated the Texas Disciplinary Rules of Professional

---

[5] Exhibit A attached to Cypresswood Exhibit Number 2 is the Affidavit of Vincent Slusher, a partner at BMP, which expressly states, "BMP has in the past represented one of the Debtor's principals, Stephen Morrow, in various matters unrelated to this case. Further, BMP represented Stephen Morrow as the petitioning partner who filed the involuntary petition in this case." [Cypresswood Ex., Slusher Aff. p. 5.]

Conduct.

## III. CREDIBILITY OF WITNESSES

At the Application and Objection Hearings, this Court heard testimony from the following witnesses: (1) Moore, a BMP attorney who worked extensively on the case; (2) Morrow, managing venturer of Cypresswood; (3) Michelle Cytacki (Cytacki) [6]; and (4) Gaile Lungaro (Lungaro), a paralegal employed by JS.

The Court finds Moore to be credible, for the most part. However, the Court does have some concerns about Moore's responses to questions concerning whether BMP disengaged itself from representing Morrow, in his individual capacity, while representing the Debtor in its Chapter 11 case. Slusher, the BMP partner and the billing attorney on all invoices sent to the Debtor, would probably have been able to provide more complete information to the Court. However, instead of appearing personally, Slusher sent Moore to answer for the firm. This decision was a poor one.

The Court finds Morrow, Cytacki, and Lungaro to be credible, although Cytacki and Lungaro's testimony was virtually useless to the resolution of the dispute at bar.

## IV. CONCLUSIONS OF LAW

### A.  Jurisdiction and Venue

The Court has jurisdiction over this contested matter pursuant to 28 U.S.C. §§ 1334(b), 157(a), and 157(b)(1). This matter is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (B),

---

[6] Cytacki testified on behalf of the Debtor, explaining that she discussed the Debtor's taxes and receipts with Deborah Andreacchi, an attorney at BMP who had worked on the Debtor's file. However, Cytacki did not testify who she is or by whom she is employed.

and (O).[7]  Additionally, this matter is a core proceeding under the general "catch-all" language of

28 U.S.C. § 157(b)(2).  *See In re Southmark Corp.,*    163 F.3d 925, 930 (5th Cir. 1999) ("[A]

proceeding is core under section 157 if it invokes a substantive right provided by title 11 or if it is

a proceeding that, by its nature, could arise only in the context of a bankruptcy case."); *In re Ginther*

*Trusts,* No. 06-3556, 2006 WL 3805670, at *19 (Bankr. S.D. Tex. Dec. 22, 2006) (holding that a

matter may constitute a core proceeding under 28 U.S.C. § 157(b)(2) "even though the laundry list

of core proceedings under § 157(b)(2) does not specifically name this particular circumstance").

Venue is proper pursuant to 28 U.S.C. § 1408(1).

**B.    The Court orders Complete Disapproval and Disgorgement for any of the following reasons: (1) BMP failed to properly disengage itself from representing Morrow, individually; (2) BMP failed to completely disclose this representation to the Court; (3) the BMP Final Application was untimely filed without cause; and (4) the Agreement is overreaching.**

The bankruptcy court is given discretion to award compensation to professionals who are

employed under 11 U.S.C. § 327.  *See In re Cahill,* 428 F.3d 536, 539-40 (5th Cir. 2005).  Section

330(a) permits (A) "reasonable compensation for actual, necessary services rendered by the trustee,

examiner, professional person, or attorney;" and (B) "reimbursement for actual, necessary expenses."

11 U.S.C. §§ 330(a)(1)(A) & (B).

**1.    BMP did not properly disengage itself from representing Morrow, in his individual capacity.**

This Court concludes that BMP never disengaged itself from representing Morrow,

---

[7] Although a bankruptcy court has limited post-confirmation jurisdiction, the court retains jurisdiction over "matters pertaining to the implementation or execution of the plan." *In re Charis Hosp., L.L.C.,* 360 B.R. 190, 199 (Bankr. M.D. La. 2007) (citing *In re U.S. Brass Corp.,* 301 F.3d 296, 304 (5th Cir. 2002)); *Wilborn v. Wells Fargo Bank, N.A. (In re Wilborn),* 401 B.R. 872, 891 n.12 (Bankr. S.D. Tex. 2009); *In re Blast Energy Servs.,* 396 B.R. 676, 684 (Bankr. S.D. Tex. 2008).  The Fifth Circuit instructs that, despite limited post-confirmation jurisdiction, it is within a bankruptcy court's jurisdiction to review fees paid for post-confirmation legal services and to issue orders requiring disgorgement of such fees. *In re Network Cancer Care, L.P.,* 197 Fed. Appx. 284, 284-85 (5th Cir. 2006).

individually. Moore and Morrow gave conflicting testimony on whether BMP disengaged itself from representing Morrow, in his individual capacity, prior to BMP commencing its representation of the Debtor. [Finding of Fact No. 18.] The burden is on the professional to comply with all relevant bankruptcy rules and regulations and to prove his compliance with such rules and regulations. *See In re Source Enters.*, No. 06-11707, 2008 Bankr. LEXIS 940, at \*24-25 (Bankr. S.D.N.Y. Mar. 27, 2008). When the evidence presented by both parties is evenly balanced, the party with the burden of proof must lose. *United States v. Wilson*, 322 F.3d 353, 361 (5th Cir. 2001) (citing *Dir., Office of Workers' Comp. Programs v. Greenwich Collieries*, 512 U.S. 267, 281 (1994)).

Moore testified that BMP disengaged itself from representing Morrow, individually, while Morrow testified to the contrary. [Finding of Fact No. 18.] With no evidence other than the conflicting testimony of these two witnesses, this Court finds that BMP did not meet its burden by a preponderance of the evidence. *See In re Bell Petroleum Services, Inc.*, 3 F.3d 889, 909 (5th Cir.1993) (Parker, J., concurring) ("Civil cases are decided by a preponderance of the evidence . . . . Evidence by 'fifty-one percent,' or to the extent of 'more likely than not,' is deemed sufficiently reliable . . ."). Indeed, if anything, Morrow's testimony was *more* credible than Moore's, thereby tipping the scales in favor of the Debtor with respect to the issue of whether BMP met its burden of proof.

Additionally, BMP failed to comply with certain Texas Disciplinary Rules of Professional Conduct. In the Memo in Support of Debtor's Objections, the Debtor's new counsel (JS) correctly asserts that BMP violated at least two of these rules: Rule 1.02 and Rule 1.15. [Finding of Fact No. 19.] First, Rule 1.02, comment 6 provides, in part, that when there is doubt as to whether an attorney-client relationship has been terminated, it is the attorney who should clarify the relationship,

"preferably in writing, so that the client will not mistakenly suppose the lawyer is looking after the client's affairs when the attorney has failed to do so." Tex. Disciplinary R. Prof'l Conduct 1.02, cmt. 6. Because BMP failed to expressly clarify its intent to terminate its individual representation of Morrow, Morrow made the exact assumption contemplated by this rule and reasonably supposed that BMP continued to represent him, individually. The record shows that Morrow even sent an e-mail to BMP attaching a notice of the lawsuit by AT&T. [Finding of Fact No. 7.] BMP responded with an e-mail stating, "We will deal with this." [Finding of Fact No. 7.] BMP's statement that it would "deal with" the claim against Morrow, individually, allowed Morrow to reasonably believe that BMP was still representing him, individually, and his belief subsequently resulted in a default judgment being entered against him. [Finding of Fact No. 7.]

Second, BMP violated Rule 1.15, which instructs attorneys how to properly decline or terminate representation. Rule 1.15(d) requires an attorney, upon termination of representation, to take reasonable steps to protect the client's interest and gives the following examples of such steps: (1) giving reasonable notice to the client; (2) allowing time for employment of other counsel; (3) surrendering papers and property to which the client is entitled; and (4) refunding any advance payments of fees that have not been earned. Tex. Disciplinary R. Prof'l Conduct 1.15(d). BMP provided no evidence to show that it took any of these steps, or any other steps, to protect Morrow's individual interests. Therefore, this Court concludes that BMP violated both Texas Disciplinary Rules of Professional Conduct 1.02 and 1.15(d).

Further, BMP's own accounting records suggest that the firm never disengaged itself from representing Morrow, in his individual capacity. The accounting records show that BMP continued receiving payments from Morrow that were credited to Morrow's personal account after BMP

became counsel for the Debtor. [Finding of Fact No. 15.] BMP's accounting history for Morrow's personal account shows that the firm received two payments from Morrow during the Application Period. On August 13, 2007, Morrow paid $58,477.66, and on October 18, 2007, he paid $22,430.17. [Finding of Fact No. 15.] BMP contends that Morrow made these payments for services rendered for him, individually, before BMP became counsel for the Debtor. However, BMP has failed to amend its disclosures to reflect this contention and has therefore neglected its duty of continued disclosure. *In re W. Delta Oil Co.*, 432 F.3d 347, 355 (5th Cir. 2005) ("[C]ase law has uniformly held that under Rule 2014(a), (1) full disclosure is a continuing responsibility, and (2) an attorney is under a duty to promptly notify the court if any potential for conflict arises."). With respect to the Debtor's bankruptcy case, BMP claims to have only been paid a total of $80,000.00, $30,000.00 of which was paid by the Debtor on September 2, 2008, and $50,000.00 of which was paid by Grace on behalf of the Debtor on December 31, 2008. [Finding of Fact No. 14.] At the Application and Objection Hearings, Morrow introduced a true and correct copy of another check written to BMP for $35,000.00 signed by Morrow through Money Strategies of Texas[8] on behalf of the Debtor. [Finding of Fact No. 15.] BMP failed to provide evidence to show to which account this money was applied. [Finding of Fact No. 15.]

In sum, this Court finds that BMP failed to meet its burden of proving, by preponderance a of the evidence, that it ever disengaged itself from representing Morrow, in his individual capacity because: (1) BMP violated at least two Texas Disciplinary Rules of Professional Conduct; (2) BMP's own accounting records show that Morrow continued paying BMP for work performed for him,

---

[8] Money Strategies of Texas is an entity which Morrow owns.

individually, after BMP became counsel for the Debtor; and (3) BMP has failed to explain how it applied the $35,000.00 that it received in January 2008.

### 2.    BMP failed to adequately disclose its individual representation of Morrow.

BMP failed to fully disclose its continued representation of Morrow, individually, in the Application to Employ BMP. Disclosure is of utmost importance in bankruptcy cases. Bankruptcy Rule 2014(a) requires "a verified statement of the person to be employed setting forth the person's connections with the debtor, creditors, [or] any other party in interest." Fed. R. Bankr. P. 2014(a); *see also In re Leslie Fay Cos.*, 175 B.R. 525, 533 (Bankr. S.D.N.Y. 1994) (holding that the duty of disclosure is so important that the failure to disclose relevant connections is an independent basis for the disallowance of fees or even disqualification). Full and complete disclosure is required in bankruptcy cases. *I.G. Petroleum, L.L.C. v. Fenasci (In re W. Delta Oil Co.,* 432 F.3d 347, 355 (5th Cir. 2005) (holding that full disclosure is a continuing responsibility, and an attorney is under a duty to promptly notify the court if any potential for conflict arises). Violation of the disclosure requirement committed by an attorney may result in a forfeiture of attorneys' fees.    *See In re Southmark Corp.,* 181 B.R. 291, 295-96 (Bankr. N.D. Tex. 1995) (citing *Rome v. Braunstein*, 19 F.3d 54, 58 (1st Cir. 1994)) (holding that the professional person must disclose and continue to disclose all connections that may effect employment eligibility; failure to do so constitutes a basis for relief from the compensation order under Rule 60(b)(6)). The bankruptcy court has the power to order disgorgement of fees paid as a sanction for nondisclosure.    *Arens v. Boughton (In re Prudhomme)*, 43 F.3d 1000, 1003 (5th Cir. 1995); *Woods v. City Nat'l Bank & Trust Co.*, 312 U.S. 262, 268 (1941) (denying compensation as a tool to strictly enforce conflict-of-interest rules); *In re W. Delta Oil Co.*, 432 F.3d at 355 (finding that the failure to disclose was sufficient grounds for

denying compensation); *Hancock v. Limor*, 2007 U.S. Dist. LEXIS 92933, at *19 (M.D. Tenn. Dec. 18, 2007) (noting that when the duty to disclose is neglected, even innocently, the attorney performs services at his peril).

The Application to Employ BMP disclosed only that BMP previously represented Morrow in several matters unrelated to this Chapter 11 case and that BMP represented Morrow as the petitioning partner who filed the involuntary petition in this case. [Finding of Fact No. 5.] However, BMP failed to disclose its continued representation of Morrow, in his individual capacity, and that the firm was accepting payments from Morrow and crediting those payments to Morrow's personal account while simultaneously representing the Debtor. [Finding of Fact No. 15.] BMP's failure to disclose these facts prevented the Court from assessing BMP's disinterestedness and therefore violated Bankruptcy Rule 2014 and 11 U.S.C. § 327(a). *In re Balco Equities Ltd.*, 345 B.R. 87, 112 (Bankr. S.D.N.Y. 2006) (holding that a failure to disclose direct or indirect relations to, connections with, or interest in the debtor violates the Bankruptcy Code).

### 3.    The BMP Final Application was untimely filed without cause.

There is a third and independent basis for Complete Disapproval and Disgorgement. This Court orders Complete Disapproval and Disgorgement because the BMP Final Application was untimely filed without cause. Section 503(a) of the Bankruptcy Code states that "an entity may timely file a request for payment of an administrative expense, or may tardily file such request if permitted by the court for cause." 11 U.S.C. § 503(a). This section is intentionally broad and leaves the setting of filing deadlines to the Bankruptcy Rules, which in turn defers to bankruptcy courts the task of setting a deadline for the filing of administrative claims. *Hall Fin. Group v. DP Partners, Ltd. P'ship (In re DP Partners, Ltd. P'ship)*, 106 F.3d 667, 672 (5th Cir. 1997).

In this case, the Amended Disclosure Statement, signed by Moore for BMP, set forth that the deadline for all professionals employed pursuant to 11 U.S.C. §§ 327 and 330 to file administrative claims was sixty (60) days after the Effective Date, making the deadline in this case April 6, 2009.[9] [Finding of Fact No. 8.] However, BMP filed the BMP Final Application on April 22, 2009—almost three weeks after the deadline. [Finding of Fact No. 12.] The Amended Plan states that failure to timely file an application for an administrative claim will result in the claim being forever barred and discharged. [Docket No. 165.] At the Application and Objection Hearings, BMP—through Moore, as its representative—admitted the BMP Final Application was late and he gave no testimony constituting cause which would give this Court reason to permit the tardy Application. [Docket No. 285, p. 33, ll. 15-25 & p. 34, ll. 1-11.]    Therefore, this Court will not—and, indeed, may not—permit the unexcused late filing of the BMP Final Application because to do so would violate a provision of the Amended Plan. *Republic Supply Co. v. Shoaf*, 815 F.2d 1046, 1051 (5th Cir. 1987) (holding that a bankruptcy order confirming a plan is entitled to the effect of *res judicata*).

4.    **The Agreement is overreaching.**

Aside from the reasons set forth above, this Court concludes that BMP is not entitled to any further compensation or reimbursement of expenses and also must disgorge all fees already paid on behalf of the Debtor because the Agreement is overreaching in two respects. First, the Agreement overreached by holding Morrow personally liable for BMP's administrative claim and any post-confirmation fees incurred by BMP. Second, the Agreement overreached by making Grace liable for BMP's post-confirmation fees.

---

[9] The Effective Date, as defined in the Amended Plan, was February 3, 2009. [Finding of Fact No. 11.] Sixty days from February 3, 2009 is April 4, 2009, which is a Saturday. Therefore, the deadline to file an administrative claim was the following Monday, April 6, 2009. Fed. R. Bankr. P. 9006(a); *In re Liberty Trust Co.*, 903 F.2d 1053, 1055 (5th Cir. 1990); *In re Oro Import Co.*, 69 B.R. 6, 8 n.2 (S.D. Fla. 1986).

The Agreement was signed by Morrow on behalf of himself, the Debtor, and Grace. [Finding of Fact No. 10.]  Although Grace had retained counsel prior to the execution of the Agreement, its counsel was given the Agreement at the eleventh hour and never approved it.  [Finding of Fact No. 10.]  Additionally, Morrow had not retained independent counsel.  Thus, Morrow was relying on BMP to advise him in its dual roles as his attorney and as attorney for the Debtor.  Because the Agreement contained provisions governing these parties' liabilities for BMP's attorneys' fees, BMP owed a fiduciary duty not only to the Debtor, but also to Morrow to ensure such provisions were not overreaching or unconscionable to either of them.

As the Fifth Circuit—applying Texas law—has explained, "When interpreting and enforcing attorney-client fee agreements, it is 'not enough to simply say that a contract is a contract. There are ethical considerations overlaying the contractual relationship.'" *Wells v. Hughes*, 294 Fed. Appx. 841, 845 (5th Cir. 2008) (quoting *Hoover Slovacek L.L.P. v. Walton*, 206 S.W.3d 557, 560 (Tex. 2006)).  An attorney has the highest duty of ethical conduct when he contracts with his client or otherwise takes a position adverse to his client's interest. *Id.*  Because BMP was still representing Morrow at the time the Agreement was signed, BMP owed him a fiduciary duty.  A presumption of unfairness or invalidity arises when a fiduciary enters into a contract with his own client. *See Keck Mahin & Cate v. Nat'l Union Fire Ins. Co.,* 20 S.W.3d 692, 699 (Tex. 2000).  "Courts have long recognized that the debtor is in a vulnerable position and is highly dependent on its attorney and [the debtor] therefore will be reluctant to object to the fees of the attorney." *In re Mayeaux,* 269 B.R. 614, 621 (Bankr. E.D. Tex. 2001).  The purpose of the disclosure process is to prevent overreaching by an attorney and to protect creditors.  Therefore, this Court has a specific duty in this case to scrutinize the Agreement to determine whether it constitutes impermissible overreaching and

whether the risks of the Agreement weigh too heavily in favor of BMP. *Id.*; *Wells*, 294 Fed. Appx. at 846.

This Court first concludes that the Agreement reached beyond the scope of the Amended Plan by making Morrow personally responsible for the Debtor's liabilities. The Amended Plan provides that the "Debtor, Purchaser, or Reorganized Debtor" is to pay all Allowed Administrative Expense Claims. [Finding of Fact No. 9.] The Amended Plan never makes Morrow, individually, responsible for any liabilities of the Debtor. Second, the Agreement also reached beyond the scope of the Amended Plan by making Grace responsible for post-confirmation fees. The Amended Plan specifically requires the "Reorganized Debtor" to be responsible for all post-confirmation fees. [Finding of Fact No. 9.] The terms of the Agreement did not conform to the terms of the Amended Plan and assigned additional obligations to both Morrow, individually, and to Grace. Given that BMP, at the time of the signing of the Agreement, was simultaneously representing both the Debtor and Morrow, individually, this Court can draw no other conclusion but that the Agreement was overreaching.

Additionally, Morrow testified that he signed the Agreement for all parties because at the closing of the sale, BMP (through Moore) stated to Morrow that without the execution of the Agreement, the sale of the Property could not proceed and the secured lenders would foreclose on the Property. [Finding of Fact No. 10.] Moore's representation constitutes overreaching because Morrow testified that, had he not been rushed to sign the Agreement, he would not have signed in his personal capacity to be liable for BMP's attorneys' fees. [Finding of Fact No. 10.] Further, Grace's counsel was not given the Agreement to review until the closing date, and Grace's counsel never approved the Agreement. [Finding of Fact No. 10.] Morrow was in a vulnerable position and

was fearful of losing the Property; he was highly dependent on BMP and, at its request, signed the overreaching Agreement. BMP had the burden to prove the fairness of the Agreement and has failed to overcome the presumption of unfairness. *Nat'l Union Fire Ins. Co.*, 20 S.W.3d at 699; *see also Archer v. Griffith,* 390 S.W.2d 735, 739 (Tex. 1964) ("The burden of establishing its perfect fairness, adequacy, and equity, is thrown upon the attorney, upon the general rule, that he who bargains in a matter of advantage with a person, placing a confidence in him, is bound to show that a reasonable use has been made of that confidence; a rule applying equally to all persons standing in confidential relations with each other."). This Court therefore concludes that the Agreement reached beyond the scope of the Amended Plan; therefore, the provisions contained in the Agreement requiring Morrow to pay both pre-confirmation and post-confirmation fees and expenses, and also requiring Grace to pay post-confirmation fees and expenses, is unenforceable.

## V. CONCLUSION

This Court, for several reasons, denies all compensation and reimbursement for expenses sought by BMP and also orders Complete Disapproval and Disgorgement

First, the Court concludes that BMP has failed to meet its burden of proving, by a preponderance of the evidence, that the firm disengaged itself from representing Morrow, individually, while it simultaneously represented the Debtor. Morrow credibly testified that he was unaware and uninformed that BMP ceased to represent him at any point. Additionally, BMP violated at least two Texas Disciplinary Rules of Professional Conduct. First, BMP provided insufficient evidence that it disengaged itself from representing Morrow, individually, and BMP's accounting records show that Morrow continued making payments on his personal account during the time period which BMP contends that it had ceased representing Morrow, individually.

Second, the circumstances are exacerbated by BMP's failure to disclose to the Court its continued representation of Morrow, individually, pursuant to 11 U.S.C. § 327 and Bankruptcy Rule 2014, and BMP's failure to disclose that it continued to accept payments from Morrow, which were credited to Morrow's personal account. These failures prevented the Court from performing its duty to ensure that no parties' interest is disadvantaged. The Fifth Circuit instructs that accurate and complete disclosure is required in a bankruptcy case, and denial of compensation and disgorgement of fees is an appropriate remedy for nondisclosure. *In re Delta Oil Co.*, 432 F.3d at 355.

Third, the Court orders Complete Disapproval and Disgorgement because the BMP Final Application was untimely filed. The Amended Plan, signed by Moore, provides that failure to timely file Administrative Expense Claims forever bars and discharges the Claim. BMP provided no reason for the tardy filing of the BMP Final Application, and therefore, the Court cannot grant the relief requested by BMP because to do so would violate the Amended Plan.

Finally, this Court orders Complete Disapproval and Disgorgement because the Agreement improperly reached beyond the Amended Plan and held Morrow personally liable for the administrative claim and post-confirmation fees owed to BMP. The Agreement also reached beyond the terms of the Amended Plan by making Grace liable for the post-confirmation fees. Further, BMP failed to overcome the presumption that the Agreement was unfair and invalid. *Nat'l Union Fire Ins. Co.*, 20 S.W.3d at 699; *Archer*, 390 S.W.2d at 739.

For all of the reasons set forth herein, the Court concludes that (1) the BMP Final Application should be denied in its entirety; and (2) the Debtor's Objection and Supplemental Objection to the BMP Final Application should be sustained. BMP must disgorge: (a) all fees paid to it to date on behalf of the Debtor; and (b) all fees credited to Morrow's personal account with BMP that were

paid while BMP was representing the Debtor.

An Order consistent with this Memorandum Opinion will be entered on the docket simultaneously with the entry of this Memorandum Opinion.

Signed this 7th day of August, 2009

Jeff Bohm
United States Bankruptcy Judge